This time we'll hear L.S. v. Webloyalty.com and Visa. Visa's not here. Good morning, Your Honor. If it would please the court, I'm David Gatch from Weiss Law here on behalf of the appellant plaintiff. Plaintiff went on to GameStop.com to buy a video game and months later found that he'd been hit with a series of recurring court charges from a company he never heard of. Upon investigation, it was discovered that that company was WebLoyalty and that WebLoyalty had been the subject of a wide-ranging investigation, along with only two other companies, by the United States Senate Commerce Committee. In the context of that investigation, certain information, internal documents of WebLoyalty and data was disclosed and the pieces of data and documents that were disclosed show that 90% of WebLoyalty's members have no idea that they are members of any WebLoyalty club, that virtually every person enrolled by WebLoyalty into its membership clubs cancel as soon as they discover that they've been enrolled, and that WebLoyalty's product usage rate by its supposed members is as low as 0.2%. Based upon these and other facts, experts concluded that WebLoyalty is not engaged in It's not a membership club. It sells nothing. It provides no product. It doesn't say that it provides any product. It said it provides rewards if you get products from other people. Is there any evidence to show that if you followed through on the discounts that they offer that you wouldn't get the discounts? Your Honor, there is, as a matter of fact. The WebLoyalty contends that the plaintiff inserted some pieces of information on its so-called enrollment page, and that page says that in two days you will get a GameStop coupon from WebLoyalty, but in fact no coupon is ever delivered, and in fact WebLoyalty's system architecture is designed to omit the providing of that coupon, and the data shows that somewhere in the order of about 3% of people who do what WebLoyalty asks only 3% get that coupon, so in fact there is no service provided. The experts concluded, and I think it's a plausible inference from the facts, that WebLoyalty is a sham. In this case. The experts testified to the Commerce Committee and issued opinions, written reports of their studies, and we incorporated those opinions, expert opinions, into our complaint and appended their opinions to our complaint, but the District Court makes no mention of the facts drawn from WebLoyalty's documents and data or the experts. The District Court said it didn't want to consider political conclusions reached by the Senate, but facts drawn from WebLoyalty's internal documents and data and experts' opinions are not political conclusions. If L.S. was 16 years old, did you interpose a defense, or is there an available defense, that he's not of the age to form a binding contract? We did not interpose that, Your Honor, because it's our position that there never was a contract here, and actually I think that it's well supported by the record. There's no evidence that the plaintiff intended to contract anything with WebLoyalty. There's a button that says continue on GameStop.com's website, and the word continue means to keep doing the same thing you're doing in the same way. On the enrollment page, it repeatedly says this is a fee-based program, your credit or debit card will be charged after 30 days, we'll use the same card that was used at GameStop. It has language. You can talk about the placement of that language, but the terms and conditions, aren't they on the enrollment page? The question is how do you get to the enrollment page? And how you get to the enrollment page is the GameStop page. That's what we coined it in our papers. And the GameStop page has a button on it that says continue. Do you want your $20 coupon, GameStop coupon? Continue. And there's no no thanks button. There's no option provided to decline. There's merely a continue button provided. And I think it's fair that when someone logs on to GameStop.com to buy a video game, and is presented with an opportunity to claim his GameStop coupon by clicking a button that says continue, that that consumer's expectation is he's continuing with GameStop.com. Now when you get to the enrollment page, WebLoyalty fosters that impression. How? It has GameStop.com's logo in the upper right-hand corner. It mentions GameStop 18 separate times. If this has nothing to do with GameStop, why is its logo there, and why is it mentioned eight times? Now this court has held that when determining the quality of disclosures, context is crucial. And your honors, I ask you to consider the context here of someone on GameStop.com, presented with a coupon, asked to click a continue button without any option to decline it, going to a page headed with GameStop's logo, and then being asked merely to provide his email address and last four digits of his debit card number. Not items that people associate with authorizing a transaction. And in fact, that's not my word. That's the word. I'm sorry, Your Honor. But if they are commercial partners in this, and they are offering each other's customers an opportunity to participate, why is this any different? Or how can we outlaw this without having major impact on all those credit cards and airlines and resorts and hotels and rent-a-cars, where you see Visa and Visa Advantage or whatever the hell it is, and you can participate with benefits from airlines and resorts? There are a lot of associations among companies to try to share their customers. Your Honor, I won't answer this in reverse order. First of all, when you click a button to go to another company's website, to go from GameStop.com to WebLoyalty.com, some indication must be provided that you're leaving GameStop.com and going to WebLoyalty.com. But that's my experience. But there was no such disclosure here. When you click the Continue button, you went to a page hosted by WebLoyalty without notice. And just one more point, Your Honor. I'm agreeing with you, but I just want to make sure I'm remembering the record correctly. That Continue button, it doesn't say, in my recollection, you're not leaving. It doesn't tell you you're leaving GameStop. It does tell you you will be obtaining the coupon from our partner, our preferred partner. And then when you get to the enrollment page, that has Shopper's Discount at the top, or Shopper's whatever it's called, Shopper's Play Name. Well, it does have Shopper's Discounts in the upper left-hand corner, but it also has GameStop in the upper right-hand corner. A much smaller type. Well, the name Shopper's Discounts, again, we submitted expert testimony to say that that's unlikely to alert someone that this is a company at all. First of all, it's not a recognized brand name. Second of all, the words are carefully chosen, the name, to sound like you're being rewarded, just as it says on the Continue button, for your purchase today at GameStop. You know, Shopper's Discounts and Rewards. And I think that that's a fair and reasonable assumption. Certainly, it can't, as a matter of law, to say this unknown company's name appearing on this enrollment page provides notice. And I do want to also point out that, in fact, WebLoyalty Scheme has been outlawed by the United States Congress and ROSCA. But another important piece of information, we received one page of discovery, one document was produced to us in discovery that we requested. And that's the so-called Script 14. And Script 14 is the official script WebLoyalty designated for this plaintiff when he joined. And it shows WebLoyalty's expectation as to this relationship. And Script 14, in fact, only has two questions. It doesn't say, how do I get my benefits? How do I get my GameStop coupon? You know, what are my benefits of membership? The only two questions WebLoyalty anticipates are essentially, who are you and how do you get my account number? So I think that shows very clearly that WebLoyalty didn't believe it had the plaintiff's authorization to make recurring withdrawals from his checking account, which is a violation of EFTA, because this court has held that when Congress uses the term, as it does in EFTA, actual authority, that Congress wants background principles of agency law to be relied upon. And those background principles require— Did you argue these background principles of agency law to the district court? Your Honor— Because my impression is you didn't. We presented to the district court that WebLoyalty knew it did not have the plaintiff's authorization. It knew that it did not—that plaintiff did not— it knew that plaintiff did not know of WebLoyalty, his enrollment, or its existence, and that is really the crucial detail, the fact that we cited some new case law as contemplated by the Federal Rules of Appellate Procedure and other case law that provides it. You can provide new lines of authority to support an already made argument. The argument was made. You've reserved rebuttal. Yes, thank you. Good morning, Your Honors. May it please the Court, my name is James Prendergast. I'm counsel for WebLoyalty and GameStop in this matter. We spoke a lot about things that may have been on the pages, but I want to start in a little bit of a different place. In this court's decision in Fink v. Time Warner, requires that a plaintiff demonstrate that the advertisement of the offer mislead a reasonable consumer acting reasonably under the circumstances. Now, the amended complaint makes a lot of conclusory allegations about WebLoyalty supposedly deceiving plaintiff, but it does not once allege that WebLoyalty failed to disclose the data pass or the monthly fee. It does not once claim that WebLoyalty failed to disclose or otherwise hid the monthly cost. And it doesn't allege a single statement that plaintiff even claims, let alone demonstrates, was itself false and misleading. There is a claim under the Connecticut Unfair Trade Practices Act, which seems as broad as... I apologize, Your Honor, but which statement do you identify in support of that? I don't know. That's my point. You just narrowed the nature of the claim, and the Connecticut Unfair Trade Practices Act is a very broad thing. It is broad. And, frankly, the client's operation, you know, doesn't really seem calculated to confer great benefits on the people who do business with them. Well, respectfully, I would disagree there. I understand. It's very similar to AAA, travel insurance, shopping rewards, things like that. Those are the benefits that are available. Those are the benefits that... You won't pick up somebody's car when they have a flat tire. No, but we'll provide insurance for all of that. We'll provide travel insurance. We'll provide buying insurance. We provide buying insurance. We provide shopping discounts. All of that is available, and there's not a single allegation here that that was ever denied to this plaintiff after enrolling in the case. It's just that we're at the motion-to-dismiss stage, and the district court applied Rule 9b standards to this Connecticut state law claim, and my understanding is that this statute sweeps more broadly than fraud. So even if you're right as to fraud, it reaches deceptive, unethical practices, and I'm not sure you would have to identify a statement in the way you're suggesting to plead such a claim. I believe, Your Honor, the cases that do discuss CUPTA and 9b talk about whether or not the plaintiff's claims are alleged based upon a claim of deception, and this plaintiff's complaint cannot be any clearer about that, that it is all based on deception. This court's decision in Rombach said that if a plaintiff chooses to base his claims on a claim of deception, 9b is going to apply to that. But even apart from it, I feel very strongly that this also feels on Iqbal and Twombly simply because it is not a plausible claim. Let me touch upon for a moment some of the things the plaintiff has mentioned. Let's start with the button, the button on the GameStop page, which he simply says, says, continue. It does not. That is not all it says. It says, number one, your purchase is complete, so you know you're done with GameStop. Number two, this is being offered as an incentive, not a reward, not a gift, not a thank you, an incentive for, quote, joining one of our partner services that will have terms and conditions. So the plaintiff's suggestion here that you are pressing a button that says continue without any warning that there is an offer in terms and conditions is just flat-out false. We get to the enrollment page where the offer is actually made. And as Your Honor pointed out, it does say in the left corner that Web Loyalty is the sponsor of Big Sharper's Discount Rewards Program. Over on the right, the logo that counsel keeps mentioning is a smaller logo of GameStop. It's partner. It's associate. It's commercial. It's the one that they're making this offer of marketing program with. And it says GameStop is a partner, not the sponsor, a partner. And that's what counsel leaves out when he talks about that logo that's over there in the corner. And as many times as GameStop is mentioned on the page, Sharper's Discount is mentioned many more times, plus a disclaimer at the bottom that says Sharper's Discount is a Web Loyalty entity. But more importantly — Mr. Katz said that this business model that your client follows has been outlawed. Would you speak to that? It's only been outlawed in one sense, Your Honor, and it's been changed. In our case, we had something called data pass, which was a mechanism by which if the consumer elects to join the program, we offered to take his card that he had just used for our partner's purchase and use that information rather than have him fill in all of the information again and go through that process. We did have him fill in the last four digits of his credit card, plus his email twice, plus he had to hit an accept button, all right next to very explicit disclosures of what all that would mean. And I would point out, so that was changed under Roscoe. You can no longer do that without having him reenter his full credit card number. But I would point out that at the time, if you look at the Federal Trade Commission's telemarketing rules for similar situations, and that's 16 CFR 310.4. I won't get into it too long. But for a preauthorization, they allowed you to use and said it was a valid transaction if you asked for the four digits for a preacquired card. So as of the time of this case, there was no Roscoe. And the kinds of standards that you had in the law in the FTC were use a four digit for a preacquired card. But let's also go back to this page for a moment. It did identify at least five different times how much this program was going to cost. It did identify at least, I can't remember the number of times, but saying billing terms and conditions would apply. And it did very explicitly identify the data pass. Would you agree that practically nobody who signs up for this program gets anything from it? No, I would not agree with that, Your Honor. We're talking about de minimis numbers, right, around one. No, again, I don't agree with that 100%. I don't agree with it. And I'll tell you why. Because it's based entirely upon a Senate report in which nobody from Web Loyalty was allowed to testify and provide contrary evidence. That is, on evidence that is for the most part dated and before this and turned on. This is the most important thing. Turned on a page that was far different than what is here today. For example, the expert that counsel keeps mentioning never examined this page. In fact, those experts never even mentioned the name Web Loyalty at all. They also base it upon a page and an offer that had, as he said, a continue button without the warnings that I just described appearing on the original GameStop page. They also had a situation in which they were criticizing the use of what's known as an interstitial page. That's when the offer page comes up before you complete your purchase on your partner's page. That's not what happened here. What happened here is our page came up after the purchase very clearly, and it says so. And it also says those offers are ones in which are described as rewards, thank yous, gifts. This was not described as anything other than an incentive to join. And, in fact, as I mentioned on the button appearing on the GameStop page, it says incentive to join. Right in the coupon on the next page, it says this is an incentive to join the program that is subject to terms and conditions. It was never portrayed as a thank you. Did Young LS ever get anything for his $12 a month? He chose not to. He never called up to get anything. That is correct, Your Honor. If I called up, what might I get? You might get lots of discounts on other products. In other words, if you had to pay $10 for sneakers, we'll give you a deal that will get you $80 on sneakers. If you needed roadside assistance coverage, someone's going to come out and tow you, we have that plan. You can come up and get that. All of those things are spelled out. Cheaper than you can get it through AAA? No, coverage. I mean, yes, coverage. You can get roadside assistance coverage that they will come out and tow you. There are probably some restrictions to it, but that's what it will have. Travel insurance. Lose your credit card, lose your wallet. They also have low price guarantees. Are they selling these things once you put one through? No, no, no. Once you join, these are the benefits to which you are entitled. But counsel, but plaintiff never followed up with them. Would you have to pay anything extra? Just your monthly fee. Your Honor, thank you. We'll hear about it later. Oh, no, we'll hear Visa. Great. Yes. Sorry to forget about it. Or maybe you prefer. I'll be immediate, right? May it please the Court, Robert Mason for Visa. I'll be very brief. The only argument that plaintiff raises to Visa on appeal is that the district court failed to consider plaintiff's claims against Visa. That's simply not the case. As shown in Visa's brief, the district court specifically considered and dismissed each count asserted against Visa. It did that because the court concluded that the plaintiff was unable to identify any statement by any defendant that the plaintiff subsequently concluded was false or misleading. That's undeniably true as to Visa because plaintiff does not allege that Visa ever made any representation at all to the plaintiff. And because all the claims sound in fraud, for that reason, we think the judgment ought to be affirmed as to Visa. Thank you. We'll hear about it. Thank you, Your Honor. What's your claim against Visa? Your Honor, our claim against Visa is that it said that it had protections that would prevent this very type of conduct from occurring, but it did not, in fact, enforce those protections. But going to what Web Loyalty's counsel said, that the plaintiff never tried to claim any of his benefits. He didn't have to. The Web Loyalty enrollment page, which they obviously know, Web Loyalty, that is, obviously knows the contents of, says that it will give you the GameStop coupon in two days, and it didn't do it. And all of the discussion about things Web Loyalty actually provides is purely argument of counsel. It's not in the record. In fact, what the record reflects is a 0.2% product usage rate in the handful of documents that were disclosed. Web Loyalty refused to produce other information, and I think it's fair to say, and consistent with precedent, that its refusal shouldn't be taken as, should be taken as, adversely, that it didn't produce that information, yet chose to just rely on raw arguments of counsel, because the information that would have been produced would not have supported it. And, in fact, another incorrect statement was that the experts whose opinions are cited in and appended to the complaint didn't consider the Web Loyalty enrollment page, and, in fact, did. And the expert, as we made clear in our papers, did consider the enrollment page from a Web Loyalty partnership, I believe with Flowers.com or Fandango, and that page is virtually identical to the enrollment page at issue here. Perhaps here it says something three times and there it says it four, but those aren't meaningful distinctions. And also the process was the same. This whole issue about interstitial pages plays no role in any of the expert reports or their opinions. It's irrelevant. As to CUTPA, it is broadly sweeping. And the district court didn't analyze the full extent of our CUTPA claim. Web Loyalty's acts of concealment, the fact- But all you really argued, I mean, the entire gravamen of your complaint, is fraud and deception. I don't see unfairness as a separately articulated claim. Well, you're right- Whatever that may be, I don't even know. Well, I do think there is unfairness. It's unfair to bill someone under the name Shopper Discounts and send communications to someone under an unknown sender name like ICSDR, as Web Loyalty did here. It's unfair to promise a coupon and not pay it. And it's unfair to, in numerous ways, what they did was simply unfair, not just to plaintiffs, but to a class of consumers. You know, this isn't a reliance-based claim, the CUTPA claim. It's one based on unscrupulous practices. And, in fact, these are unscrupulous practices. But I do want to- We have your arguments. They're extensive. We have the briefing. Thank you all. We will reserve decision.